IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GL TRADE AMERICAS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 C 1558 |
| | ) | |
| TRADING TECHNOLOGIES INTERNATIONAL, INC. | ) ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

GL Trade Americas, Inc. ("GL") alleges in its First Amended Complaint that competitor Trading Technologies International Inc. ("TT") has engaged in false advertising, unfair competition, and deceptive trade practices by misrepresenting the scope of its patents. (Dkt. No. 42 (Pl.'s First Am. Compl.).)  Before the court is TT's "Motion to Dismiss Pursuant to Rules 12(b)(6) and 9(b)." (Dkt. 45 (Def.'s Mot.).) For the reasons that follow, the motion is granted.

BACKGROUND

The instant dispute has its roots in long-standing litigation over patents relating to computer software used for electronic trading in the futures industry. *Trading Techs. Int'l., Inc. v. eSPeed, Inc.*, 04 C 5312, 2006 WL 3147697, at *1 (N.D. Ill. Oct. 31, 2006). Consequently, a bit of history is required. TT contends that its patented software[1] allows traders to quickly and accurately place orders by coupling a static display of prices with dynamic displays of "bid" and "ask" columns. *Id.* This allows traders to "track the changing market prices without the prices

---

[1] The patents involved are TT's patents numbered __, __, 132 and __,__, 304, issued by the U.S. Patent and Trademark Office on Aug. 3, 2004, and July 20, 2004, respectively.

shifting from underneath [them]." *Id.* TT contends that this is an innovation over the prior art because, previously, a quickly fluctuating market often caused traders to miss their prices when they entered an order at the same time the inside market was moving. *Id.*

In 2004 and 2005, TT filed suit against a number of companies alleging infringement of the '132, and '304 patents, GL among them. TT's complaint against GL is presently pending before Judge Edmond E. Chang. *Trading Techs. Int'l. Inc. v. GL Consultants, Inc.*, No. 05 C 4120 ("GL suit"). Of particular import, in 2005, Judge James B. Moran, who is now deceased, was assigned the GL suit, and several similar pending cases, for the purposes of dealing with common issues. (Def.'s Mot. at 3.) One of those common issues was claim construction, specifically the construction of the claim term "static" in "static display of prices" and "common static price axis" in TL's '132 and '304 patents. *Trading Techs. Int'l., Inc. v. eSpeed, Inc.*, 04 C 5312, 2006 WL 3147697, at *3 (N.D. Ill. Oct. 31, 2006). Judge Moran construed "common static price axis" to mean "a line comprising price levels that do not change positions unless a manual re-centering command is received and where the line of prices corresponds to at least one bid value and one ask value." *Id.* at *4. He construed "static display of prices" to mean "a display of prices comprising price levels that do not change positions unless a manual re-centering command is received." *Id.* Judge Moran's ruling, in essence, was that TT's patents did not cover automatic re-centering, that is, software in which the price levels automatically change positions when new data is received reflecting a change in the inside market. *Id.* at *4–*5.

After Judge Moran's claim construction determination, eSpeed, a defendant in one of the cases that had been consolidated for discovery, went to trial for the sale of its Futures View

2

product. A jury found that Futures View willfully infringed the '132 and '304 patents. *See Trading Techs. Int'l v. eSpeed, Inc.*, 595 F.3d 1340, 1349 (Fed. Cir. 2010). The Federal Circuit, reviewing the claim construction de novo, affirmed. *Id.* at 1354–55. The Federal Circuit likewise affirmed the jury verdict against eSpeed. *Id.* at 1160–1163.

In ruling in a related case, Judge Robert M. Dow. Jr. explained that the Futures View product was designed with a dynamic price axis, but had a mode in which the user could opt to have the price axis remain stationary. *See Rosenthal Collins Grp., LLC v. Trading Techs. Int'l., Inc.*, 05 C 4088, 2009 WL 3055381, at *3 (N.D. Ill. Sept. 18, 2009). Because it was possible for a trader to use this software entirely in a mode protected by the patents, it was infringing. *Id.* Given that the Futures View product had been found infringing, Judge Dow denied summary judgment to the owner of an allegedly similar product. *Id.* at *4.

With this background in mind, the court turns to the allegations in GL's First Amended Complaint. GL contends that TT has caused its "X_Trader Pro" software, including its "MD Trader" module, to be distributed in interstate commerce and marked with the patent numbers for the '132 and '304 patents in a way that gives a misleading impression as to the character of the product and the scope of the patents. (Pl.'s First Am. Compl. ¶ 11.) GL makes the same allegation as to TT's "X_Trader" software. (*Id.* at ¶ 12.)

GL contends that TT is an experienced patent litigator, and comments that it is currently litigating the '132 and '304 patents in this district. (*Id.* at ¶¶ 13–14.) GL alleges that Judge Moran's claim construction put TT on notice that its patents do not cover electronic trading software products that have "automatic re-centering." (*Id.* at ¶ 15.) GL's complaint next cites a June 20, 2007, ruling by Judge Moran in which he granted eSpeed summary judgment of non-

3

infringement as to its products containing "automatic re-centering of the price axis uncontrolled by the user." (*Id.* at ¶ 16); *see Trading Techs. Int'l., Inc. v. eSpeed, Inc.*, 507 F. Supp. 2d 854, 867 (N.D. Ill. 2007). GL states that Judge Moran's claim construction was affirmed by the Federal Circuit. (*Id.* at ¶ 17.)

GL contends that both the "X_Trader Pro" and "X_Trader" products contain "a price axis in [their] display that automatically re-centers or can automatically re-center." (*Id.* at ¶¶ 18–19.) GL alleges that TT's patent markings are present at all times on both products, including when the products' automatic re-centering feature is turned on. (*Id.* at ¶ 21.) With its complaint, GL has included a screen shot of the MD Trader module showing that when the automatic grid centering feature is on, the patent numbers for the '304 and '132 patents are displayed on screen. (*Id.* at Ex. 6.) The products' default mode apparently does not allow for automatic re-centering, but a trader may select a mode in which automatic re-centering occurs. (*Id.* at Ex. 7.) GL additionally alleges that TT has continued to mark its promotional materials with the '132 and '304 patent numbers. (*Id.* at ¶ 20.) Those promotional materials explain that the software allows the user to "keep the market centered or allow it to float from top to bottom of [the] grid." (*Id.* at Ex. 8).

GL contends that TT's display of its patent markings when its products are in a mode in which they can automatically re-center is contrary to the holdings of the district court and the Federal Circuit, and gives the misleading impression that a product that functions by automatic re-centering is covered by the '132 and '304 patents. (*Id.* ¶¶ at 22–24.) GL brings claims for false advertising under §43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Count I); unfair competition under §43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Count II);

and deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), 815 ILCS §§ 510/1 et seq. (Count III).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts, accepted as true, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Although a complaint's factual allegations need not be detailed, they must provide more than labels and conclusions and "allege enough to raise a right to relief above the speculative level." *Ruiz v. Kinsella*, 770 F. Supp. 2d 936, 941 (N.D. Ill. 2011) (citing *Twombly*, 550 U.S. at 555).

## ANALYSIS

In arguing that GL's complaint is insufficient, TT presents three principal arguments: (1) the Lanham Act claims must be dismissed because the marking provisions of the Patent Act must take precedence over the Lanham Act; (2) GL has failed to meet the heightened pleading standard requiring a showing of bad faith by TT in marking its products in order to prevent a conflict between the Patent Act and the Lanham Act; and (3) Count III does not state a claim for deceptive trade practices under the IUDTPA. The court notes that although TT cites Fed. R. Civ. P. 9(b) as an additional basis for its motion, its argument in that regard boils down to its assertion that GL has failed adequately to allege bad faith. As such, the court will not consider this argument separately.

1. Conflict between Patent Act and Lanham Act

TT argues that GL is attempted to bypass the intent to deceive requirement that is part of the False Marking Statute, 35 U.S.C. § 292, by bringing Lanham Act claims. GL initially brought a false marking claim in its original complaint (Dkt. No. 1 (Pl.'s Compl.)), but dropped it from its amended complaint, which is at issue here. TT argues, without citation to authority, "that when a direct conflict arises between the specific provisions of the Patent Statute and the general provisions of the Lanham Act, the specific provisions must prevail." (Def.'s Mot. at 9.) TT does little to develop this argument other than to allege that Lanham Act claims that are based on alleged false marking require an allegation of bad faith. This is essentially the crux of its second argument, so the court will proceed to consider it.

2. Showing of Bad Faith Required

Although GL has brought unfair competition and false advertising claims under the Lanham Act, the claims are essentially identical in that both rely on § 43(a) of the Lanham Act. To recover for such a claim, a plaintiff ordinarily must show: (1) that the defendant made a false statement of fact about its own or another's product; (2) that the statement deceived or has the tendency to deceive a substantial portion of its audience; (3) that the deception is likely to influence purchasing decisions; (4) that the defendant caused the false statement to enter interstate commerce; and (5) a likelihood of injury. *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 819 (7th Cir. 1999).

The parties disagree as to whether, in this instance, GL additionally is required to plead bad faith. The court agrees with TT that such pleading is required. In *Zenith Elecs. Corp. v. Exzec*, 182 F.3d 1340, 1353 (Fed. Cir. 1999), the Federal Circuit held that a Lanham Act unfair

competition claim based on marketplace statements did not conflict with the Patent Act provided that the statements were made in bad faith. The court additionally held that Federal Circuit law governs as to the question of when unfair competition claims are preempted by the patent laws. *Id.* at 1347.

At issue in *Zenith* was a Lanham Act counterclaim brought by Exzec, Inc., which had been sued for allegedly infringing Zenith's patents. *Id.* at 1342–43. Exzec alleged that Elo Touch, a licensee of the patents, falsely told potential customers that Exzec's product, a touch panel system for computers, infringed Zenith's patents. *Id.* at 1343. The *Zenith* court acknowledged tension between the Lanham Act and the patent laws, noting that "[W]e have on several occasions recognized that a patentee's statements regarding its patent rights are conditionally privileged under the patent laws, so that such statements are not actionable unless made in bad faith." *Id.* at 1352–53. That privilege, according to the *Zenith* court, is rooted in 35 U.S.C. § 287, which authorizes patent holders to "give notice to the public" of a patent by marking its patented articles, and which makes marking or other notice to an alleged infringer a prerequisite to recovering damages. *Id.* at 1353.

The *Zenith* court then held: "Accordingly, we conclude that before a patentee may be liable under § 43(a) [of the Lanham Act] for marketplace activity in support of its patents, and thus be deprived of the right to make statements about potential infringement of its patent, the marketplace activity must have been undertaken in bad faith." *Id.* This was true even though § 43(a) claims typically do not require any showing of bad faith. *Id.* The *Zenith* court noted that "exactly what constitutes bad faith remains to be determined on a case by case basis," but added

7

that if a patentee knows that a patent is invalid, unenforceable or not infringed, yet represents otherwise, bad faith would be found. *Id.* at 1354.

GL contends that *Zenith* is distinguishable, and no allegation of bad faith is required here, because *Zenith* concerned statements made in the marketplace. GL contends that the rationale underlying the rule in *Zenith* — that without a showing of bad faith, a patent holder could be held liable for good faith efforts to enforce its patent rights — is inapplicable here. (Dkt. No. 51-1 ("Pl.'s Resp.") at 2.) GL argues that no federal goal is served by allowing a patent holder to falsely tell the world that it has patent protection on a subject matter that is outside the scope of the patent. (Pl.'s Resp. at 2.)

The court disagrees. The *Zenith* court relied on 35 U.S.C. § 287, which requires marking as a prerequisite for recovering damages, as the basis for the privilege that allows patentees to make marketplace statements about their patents. 182 F.3d 1340. Given that marking is one method through which a patentee communicates its patent rights to the public, the court sees no reason why marking should not be considered a marketplace statement for the purposes of the *Zenith* rule requiring allegations of bad faith in certain Lanham Act claims to avoid a conflict with the patent laws. Indeed, other district courts have so held.

In *DP Wagner Mfg. Inc. v. Pro Patch Sys., Inc.*, 434 F. Supp. 2d 445, 461 (S.D. Tex. 2006), the primary case relied upon by TT, the court found that the reasoning of *Zenith* applied to claims that a patentee had "over-mark[ed]" its products with numbers for patents that did not cover the products. *See also King Tuna, Inc. v. Anova Food, Inc.*, No. CV07-0751, 2011 WL 839378, at *6 (C.D. Cal. Feb. 24, 2011) (holding that bad faith must be alleged for a Lanham Act claim based on false patent marking to survive); *Sukumar v. Nautilus, Inc.*, --- F. Supp. 2d ---

8

, 2011 WL 6325854, at * 9 (W.D. Va. Dec. 19, 2011) (applying bad faith requirement to state law claims centered on allegations of false marking). Although GL has not brought a false marking claim in its amended complaint, at their core the claims challenge the manner in which TT marked its patented products. Given that, and in light of the case law described above, allegations of bad faith are required.

        3.      <u>GL's Allegations of Bad Faith</u>

In the alternative, GL argues that it has adequately pleaded allegations of bad faith, although the words "bad faith" are not included in its complaint. GL points to the allegations in ¶¶ 13–17 of its amended complaint, which it contends provide a clear statement as to TT's knowledge of the scope of the patents at issue here, particularly its knowledge that the patents do not cover automatic re-centering. (Pl.'s Resp. at 17–18.) GL further points to its allegations in ¶¶ 18–19 that TT's X_Trader and X_Trader Pro products display the '132 and '304 patent numbers when the price axis is in the process of automatically re-centering. (Pl.'s Resp. at 18.)

What constitutes bad faith in the communication of patent rights is somewhat nebulous, and typically should be decided on a case by case basis. *See Zenith*, 182 F.3d at 1354. However, "[i]n general, a threshold showing of incorrectness or falsity, or disregard for either, is required in order to find bad faith in the communication of information about the existence or pendency of patent rights. Indeed, a patentee, acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights 'even though he may misconceive what those rights are.'" *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998) (quoting *Kaplan v. Helenhart Novelty Corp.,* 182 F.2d 311, 314 (2d Cir. 1950)).

9

In the context of false marking claims, courts have held that where a patentee's legal position as to its patents is sufficiently plausible, the claim cannot survive as a matter of law. *Max Impact, LLC v. Sherwood Grp., Inc.*, 09 Civ. 902, 2011 WL 507600 (S.D. N.Y. Feb. 14, 2011), is instructive. There, the court dismissed a counterclaim for false marking because the patentee's position that its product was covered by the patent at issue was plausible. *Id.* at *4. The court similarly dismissed another false marking counterclaim involving an allegedly expired patent because the patentee's legal position that a longer expiration date applied was tenable under the law. *Id.*[2]

A similar problem faces the court here. The issue boils down to whether GL's interpretation that is allowed (or perhaps even required) to mark its products even when they are being used in a non-infringing mode is legally plausible so as to negate any possibility of a finding of bad faith. The court finds that in light of Judge Moran's and Judge Dow's rulings in the patent disputes, it was legally plausible for TT to believe that its products were covered by the '132 and '304 patents, and to mark them as such regardless of the products' modes. As such, it could not have acted with bad faith as a matter of law.

It is worth noting the false marking statute "has not been interpreted to require the same type of exact claim construction that would be required in an infringement action." *Mass. Inst. of Tech. v. Abacus Software, Inc.*, No. 5:01cv344, 2004 WL 5268123, at *20 (E.D. Tex. Aug. 4, 2004). Some inexactness is permitted, such as a listing of multiple patents with a notation that the product is covered by one or more of the patents. *Id.* (citing 7 Donald S. Chisum, Chisum on

---

[2] GL relies in part on *Max Impact* because the court there allowed a false advertising Lanham Act claim to go forward based in part about allegations about the scope of patent coverage. 20ll WL 507600, at *6. However, there was no discussion about whether a bad faith standard should be applied to Lanham Act claims involving patent communications, and it is not clear that the parties raised the issue. As such, the court does not find it persuasive on this point.

Patents, § 20.03[7][c][iii] (2002)); *see also Harrington v. CIBA Vision Corp.*, No. 3:08-cv-00251, 2010 WL 2889584, at *5 (W.D.N.C. July 21, 2010) (holding that it was permissible under the false marking statute for a company to mark the packaging of its contact lens solution with four patents covering various aspects of a cleaning method for the lenses). Additionally, a product may be covered by a patent "if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of non-infringing modes of operation." *Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1350 (Fed. Cir. 2007).

Clearly, it was legally plausible for TT to believe it was entitled to display its patent marks when its products are being used in a mode where there is no possibility of automatic re-centering. Given the verdict in the eSpeed trial regarding the Futures View product and Judge Dow's subsequent ruling in *Rosenthal* holding that the patents cover products that have both "static" and "automatic re-centering" modes of operation, this is eminently reasonable. The question here is whether GL has adequately alleged that TT engaged in false or misleading conduct by using its patent marks when its products are set to a mode that allows for automatic re-centering.

GL cites no case law or statutory authority standing for the proposition that patent marks may not be displayed when the same product is being used in a manner that is potentially not covered by the patents.[3] GL argues that TT is marking its products in a way that fails to tell the public of the "proper bounds of its patent." (Pl.'s Resp. at 7.) GL, however, provides no support for its contention that TT must inform the public as to which features of its product are covered

---

[3] TT contends that even when the product is being used in a non-infringing mode, it is still covered by the "computer readable medium" claims of the patents. The court need not address this argument in light of its resolution of the case, however.

11

by the patent. The marking statute serves three purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give notice that a product is patented; and (3) aiding the public in identifying whether a product is patented. *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998). All of these purposes are met in this case by TT displaying its patent numbers, which competitors or the public can use to determine the scope of the patent.

Given that there is no clear statutory or case law addressing the proper bounds of patent marking when a product has a mode or use in which it is potentially not covered by the patents, the court finds that TT's position of marking its product regardless of mode is legally plausible. GL takes issue with analogizing its claims to false marking claims, noting that it has not brought such a claim. (Pl.'s Resp. at 16.) The court, however, agrees with TT that where the gravamen of the claim is clearly false marking, such cases are relevant to a determination of whether GL has adequately alleged bad faith. GL also notes that it was not a party to the eSpeed proceedings or to *Rosenthal*, in which Judge Dow held that a product with modes in which the price axis was either dynamic or stationary could infringe the TT patents. (*Id.* at 16 n.9.) While true, this does not change the fact that based in part on those proceedings, TT's position in marking its product with the '132 and '304 patent numbers is legally plausible. Given that GL has failed to sufficiently allege bad faith and cannot do so as a matter of law, its Lanham Act claims must be dismissed with prejudice.

3. <u>GL's IUDTPA claim</u>

GL's claim under the IUDTPA suffers from the same fatal flaw as its Lanham Act claims. GL acknowledges that a claim under the IUDTPA is resolved by the same standards as a Lanham Act claim. *See Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, No. 08 400, 2011

WL 1811446, at *5 (N.D. Ill. May 12, 2011). Similarly, the requirement of bad faith should likewise be applied to this state law claim in order to avoid a conflict with the Patent Act. *See Zenith*, 182 F.3d at 1354; s*ee also Champion Labs Inc. v. Parker-Hannifin Corp.*, 1:10-CV-02371, 2011 WL 1883832, at *11 (E.D. Cal. May 17, 2011) (applying a bad faith standard to a state law unfair competition claim). Because GL cannot show that TT acted in bad faith, as a matter of law, its IUDTPA claim must be dismissed with prejudice.

## CONCLUSION

For these reasons, TT's "Motion to Dismiss Pursuant to Rules 12(b)(6) and 9(b)" (Dkt. No. 45) is granted and GL's complaint is dismissed with prejudice.

ENTER:

*[signature: James F. Holderman]*

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: Jan. 23, 2012